UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

NORMAN GRAY,

Defendant.

21-CR-713 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Trial in this wire fraud case is scheduled to begin on May 20, 2024.  Defendant Norman

Gray moves to quash a recently issued grand jury subpoena requiring him to disclose the

passcode to an iPhone seized from his person incident to his arrest.  He argues that the subpoena

violates his Fifth Amendment right not to "be compelled in any criminal case to be a witness

against himself."  U.S. Const. amend. V.  Gray also moves for return of the iPhone under Federal

Rule of Criminal Procedure 41(g).  For the reasons that follow, the Court quashes the subpoena,

but denies the Rule 41(g) motion.

## I.     Background

On November 18, 2021, a grand jury in this District returned an Indictment charging

Gray with engaging in a scheme to commit wire fraud in violation of 18 U.S.C. § 1343, and for

aiding and abetting the same in violation of 18 U.S.C. § 2.  Dkt. 2.  That same day, the Hon. Ona

T. Wang, United States Magistrate Judge, issued a warrant for Gray's arrest.  Dkt. 4.

On November 30, 2021, federal law enforcement officers arrested Gray in his home in

Hamden, Connecticut, Dkt. 5, and seized an iPhone from Gray's person, Dkt. 99, Ex. 1

("Rodriguez Aff.") ¶¶ 3, 8; *id.*, Ex. 2 ("Sugarman Aff.") ¶¶ 3, 7.  On December 7, 2021, the Hon.

James L. Cott, United States Magistrate Judge, issued a warrant authorizing the Government to search the seized iPhone. Rodriguez Aff. ¶ 10; *see also* Dkt. 99, Ex. 1 at 17 (copy of warrant). On or about December 8, 2021, technical personnel with Homeland Security Investigations ("HSI") attached the iPhone to a proprietary forensic tool used to bypass smartphone passcodes. Rodriguez Aff. ¶ 14. Once connected, however, the HSI technical personnel determined that the iPhone's operating system was not yet supported by the forensic tool (which is limited to certain versions of smartphones' operating systems). *Id.* Accordingly, the iPhone was disconnected from the forensic tool and placed into evidence. *Id.*

On March 5, 2024, Gray's counsel asked the Government via email if the defense could "get Mr. Gray's phone back." Dkt. 99 at 2. That same day, apparently prompted to inquire by Gray's counsel's email, HSI Special Agent John Rodriguez learned that software updates to the forensic tool might now enable HSI to bypass the iPhone's passcode. Rodriguez Aff. ¶ 15. The software update had been released on or about December 16, 2022, *i.e.*, nearly 15 months earlier. *Id.* On March 8, 2024, the Government sought and obtained a new warrant from Judge Wang to search the seized iPhone. Dkt. 99, Ex. 2 at 2 (copy of warrant).

On March 12, 2024, Gray's counsel emailed the Government and represented, for the first time, that the defense "believe[s] that there is information on the phone both material and helpful to [Gray's] defense." Dkt. 99 at 2. Since March 12, 2024, the iPhone has been connected to the forensic tool. *Id.* As yet, the forensic tool has been unable to bypass the passcode. *Id.*

On March 15, 2024, the Government issued a grand jury subpoena requiring Gray to produce the passcode to the seized iPhone. Dkt. 94, Ex. 1 (copy of subpoena). On March 28,

2024, Gray filed the instant motions to quash and for the return of property.  Dkt. 94 ("Def.

Br.").  On April 5, 2024, the Government opposed the motions.  Dkt. 99 ("Gov't Br.").

## II.      Discussion

### A.      Motion to Quash

#### 1.      Legal Standard

Under the Fifth Amendment, no person "shall be compelled in any criminal case to be a

witness against himself."  U.S. Const. amend. V.  Not all compelled communications, however,

are covered by the Fifth Amendment.  The Fifth Amendment applies "only when the accused is

compelled to make a testimonial communication that is incriminating."  *Fisher v. United States*,

425 U.S. 391, 408 (1976); *see also Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 189 (2004).

A communication is testimonial if it requires an individual "to disclose the contents of his

own mind."  *Doe v. United States*, 487 U.S. 201, 211 (1988) (quoting *Curcio v. United States*,

354 U.S. 118, 128 (1957)).  The Supreme Court has thus often emphasized that "there is a

significant difference between the use of compulsion to extort *communications* from a defendant

and compelling a person to engage in *conduct* that may be incriminating."  *United States v.

Hubbell*, 530 U.S. 27, 34–35 (2000) (emphasis added).  "[A] criminal suspect may be compelled

to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of

his voice," because such actions do not require the suspect to "relate[] either express or implied

assertions of fact or belief."  *Id.* at 35 (citations omitted).  "Unless some attempt is made to

secure a communication—written, oral or otherwise—upon which reliance is to be placed as

involving the accused's consciousness of the facts and the operations of his mind in expressing

it, the demand made upon him is not a testimonial one."  *Doe*, 487 U.S. at 211 (cleaned up).

A communication is incriminating if it "could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445 (1972). "Compelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." *Hubbell*, 530 U.S. at 38 (quoting *Doe*, 487 U.S. at 208 n.6).

### 2. Application

For the reasons persuasively set out by Judge Liman in *United States v. Shvartsman*, No. 23 Cr. 307 (LJL), 2024 WL 1193703 (S.D.N.Y. Mar. 20, 2024), the Court finds that the Fifth Amendment bars the Government from compelling a criminal defendant to disclose the passcode to his smartphone. As Judge Liman there explained, such a communication would be testimonial (because it requires a suspect to "disclose the contents of his own mind," *Doe*, 487 U.S. at 211) and incriminating (because it "may 'lead to incriminating evidence,'" even if the passcode itself "is not inculpatory," *Hubbell*, 530 U.S. at 38 (quoting *Doe*, 487 U.S. at 208 n.6)). *See generally Shvartsman*, 2024 WL 1193703, at *22–26.

The Government's rejoinder to the analysis in *Shvartsman* is unpersuasive. It relies on the existence of a "foregone conclusion" exception to the "act of production" doctrine. That doctrine recognizes that the "act of producing evidence" can have "communicative aspects of its own, wholly aside from the contents . . . produced," protected by the Fifth Amendment—the act of production can, for example, convey that particular evidence exists, is within a person's possession or control, and is authentic. *Fisher*, 425 U.S. at 410. The Supreme Court, however, has recognized an exception to that doctrine. In a particular case, some implied facts—for instance, that specified documents exist—may be a "foregone conclusion," such that requiring a witness to implicitly admit such facts "adds little or nothing to the sum total of the Government's

information" and thus does not implicate the Fifth Amendment. *Id.* at 411. Such is the case here, the Government argues, because providing a password conveys only that "I am the person who knows the password for this phone," and that information, it argues, is a foregone conclusion in that the iPhone at issue was seized from Gray's person. Gov't Br. at 4–6 (citing *United States v. Smith*, No. 22 Cr. 352 (JSR), 2023 WL 8611259, at *3 (S.D.N.Y. Dec. 13, 2023)).

As Judge Liman explained, however, that argument does not respond to the issue at hand. The act of production doctrine, and the foregone conclusion exception, arise from compelled *physical* acts that *implicitly* convey information, *see Shvartsman*, 2024 WL 1193703, at *25–26, with the issue on which the exception turns being whether the implicitly conveyed information "rises to the level of testimony within the protection of the Fifth Amendment," *Fisher*, 425 U.S. at 411. Here, however, the Government demands more. It seeks to compel Gray to speak. The subpoena directs him to appear and testify before a grand jury, and, once sworn, to disclose the passcode to his iPhone, *see* Dkt. 94, Ex. 1, and thus "to disclose the contents of his own mind," *Doe*, 487 U.S. at 211.[1] Like the "vast majority of verbal statements," a response to the Government's command would be testimonial, as it would require Gray to "convey information or assert facts." *Id.* at 213; *see also Pennsylvania v. Muniz*, 496 U.S. 582, 596 (1990) ("Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the 'trilemma' of truth, falsity, or silence . . . ." (footnote omitted)).

---

[1] For purposes of this motion, the Court assumes *arguendo* that the Government's use of a grand jury subpoena at this juncture—issued some nine weeks before trial and some 28 months after seizure of the iPhone—is proper.

For this reason, the Supreme Court has stated that a witness may not be forced to reveal to "an inquisitor the combination to a wall safe." *Hubbell*, 530 U.S. at 43. That is so even though the combination "itself is not inculpatory." *Id.* at 38; *see also Kastigar*, 406 U.S. at 445 (a communication is incriminating if it "could be used in a criminal prosecution or *could lead to other evidence that might be so used*" (emphasis added)). In compelling Gray to reveal the passcode to his iPhone—the modern-day equivalent of a wall safe—the subpoena requires testimony from Gray that may tend to incriminate him. The Fifth Amendment prohibits such compulsion.

The Court thus grants Gray's motion to quash the subpoena.[2]

---

[2] In its opposition, the Government proposes an alternative approach, under which it would move for the Court to direct Gray, under the All Writs Act, 28 U.S.C. § 1651, to unlock the iPhone, deactivate the passcode, and then return the iPhone to the Government for its review. Gov't Br. at 7. The Government has not moved for such relief and the parties have not briefed the issues it would present, in general or in the posture of this case. The Court thus does not have occasion to consider whether such an order would implicate or violate the Fifth Amendment. It suffices to note that a motion for such an order would present a distinct issue which federal courts do not appear to have uniformly resolved. *Compare, e.g., United States v. Spencer*, No. 17 Cr. 259 (CRB), 2018 WL 1964588, at *1–4 (N.D. Cal. Apr. 26, 2018) (act of decrypting phone is not testimonial and thus falls outside the Fifth Amendment), *with, e.g., In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1346–49 (11th Cir. 2012) (act of decrypting hard drives is testimonial and thus falls within the Fifth Amendment). In the posture of this case, an application for such relief at this date would also raise questions arising from the inopportune timing of such an application. Such an application could have been pursued at any time since the iPhone was seized in November 2021, yet the Government did not pursue such relief, including during the long period when it believed the forensic tool alternative to be unavailable. With trial weeks away, the Government's accessing the iPhone now, depending on the scale and nature of its contents, potentially could burden the defense. *Cf. United States v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977) (relief under All Writs Act must be "calculated in [a court's] sound judgment to achieve the ends of justice entrusted to it" (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942)).

### B.    Motion for the Return of Property

#### 1.    Legal Standard

Under Rule 41(g), any person "aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "The Rule recognizes that federal courts have equitable jurisdiction to order the return of property." *Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007). "To prevail on a Rule 41(g) motion, the moving party 'must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the Government's need for the property as evidence has ended.'" *United States v. Seabrook*, No. 16 Cr. 467 (AKH), 2021 WL 965772, at *2 (S.D.N.Y. Mar. 15, 2021) (quoting *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005)).

#### 2.    Application

The Court denies Gray's Rule 41(g) motion. Even assuming *arguendo* that the iPhone is Gray's,[3] Gray has not shown that the iPhone's initial seizure was illegal or the Government's need for it as potential evidence has ended.

---

[3] Gray appears at points now to dispute this. *See* Def. Br. at 7, 9 n.5, 11. If the iPhone were not Gray's, such would separately call into question his entitlement for its return under Rule 41(g). *See Ferreira*, 354 F. Supp. 2d at 409 (movant must show "as a preliminary matter that the property in question was in fact his to begin with"); *see also, e.g., United States v. Provenzi*, No. 21 Civ. 398 (LJV) (JJM), 2024 WL 1045178, at *2 (W.D.N.Y. Mar. 11, 2024) (movant's failure to show that the seized evidence, a Ferrari, was not stolen left him unable to establish lawful possession); *Seabrook*, 2021 WL 965772, at *2 (movant's failure to offer a "reasonable explanation as to the source of" seized currency left him unable to establish lawful possession); *cf. United States v. U.S. Currency Amounting to Sum of $20,294.00 More or Less*, 495 F. Supp. 147, 153 (E.D.N.Y. 1980) (movant's failure consistently to claim ownership "demonstrated an apparent disinterest in the currency which . . . undercuts still further his present claim to the money" seized from his apartment).

Gray does not dispute that the initial seizure of the iPhone from his person was legal. It clearly was. The Government had a valid warrant for Gray's arrest, Dkt. 4, empowering the arresting officers to search Gray's person incident to his arrest "and seize the fruits or evidences of crime," *Riley v. California*, 573 U.S. 373, 382 (2014) (quoting *Weeks v. United States*, 232 U.S. 383, 392 (1914)); *see also United States v. Babilonia*, 854 F.3d 163, 179–80 (2d Cir. 2017). The iPhone was thus validly seized.[4]

Gray argues that the Government's seizure has since become unlawful, however, because of the length (28 months) of the period in which the Government has held onto the phone. Def. Br. at 10–12. An otherwise lawful seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Here, however, the Government's mission of accessing the phone has been hampered by the iPhone's encryption, for which the Government is not responsible. The Government reasonably retained the iPhone while attempting to bypass the passcode, as it now is doing, using the updated forensic tool. *See United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 312–13 (S.D.N.Y. 2018) ("given the difficulties posed by encryption" it is not unreasonable for the Government to continue to hold onto a smartphone as it "continues to seek to de-encrypt" its contents through new technology); *cf., e.g., United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) ("Courts have . . . consistently 'permitted some delay in the execution of search warrants involving computers because of the complexity of the search' . . . ." (quoting *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)).

---

[4] The Government's attempts to search the iPhone were also lawful (and continue to be lawful). Under *Riley*, to search the iPhone, the Government was required to obtain a search warrant. 572 U.S. at 401–02. The Government has done so twice in this case—at the time of Gray's arrest, Dkt. 99, Ex. 1 at 17, and on March 8, 2024, after Agent Rodriguez learned of an update to the forensic tool, Dkt. 99, Ex. 2 at 2.

*United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), on which Gray relies, is

inapposite.  There, the Government seized unencrypted hard drives from the defendant's home,

created electronic copies, and then returned the hard drives to their owner.  *See id.* at 210.  *Metter*

raised the question whether there is an "upper limit as to when the Government must *review*

electronic data to determine whether the evidence falls within the scope of a warrant."  *Id.* at 215

(emphasis added).  Fifteen months after the warrant's execution, the Government in *Metter* had

not even begun to "conduct[] its [privilege] review of the [electronic] evidence seized," and

concededly had "no plans whatsoever to *begin* review of that data."  *Id.* (emphasis in original).

The district court held the Government's "blatant disregard for its responsibility" to "determine

whether any irrelevant, personal information was improperly seized" unreasonable, so as to

violate the Fourth Amendment.  *Id.* at 215.  The issue here is different.  The Government cannot

access the contents of the seized iPhone until it can decrypt it.  Having been unable to do so, the

Government cannot be faulted for having failed to determine whether the iPhone contains

evidence relevant to Gray's case.  *See Pinto-Thomaz*, 352 F. Supp. 3d at 313 ("The '[r]etention

of evidence by the government is proper if the property is needed in an investigation or

prosecution unless these 'interests can be satisfied even if the property is returned.'  As the

Government has been unable to access and image the contents of the iPhone, its interests would

be sacrificed by the phone's return." (citation omitted)).[5]

The Court thus denies Gray's Rule 41(g) motion.[6]

---

[5] To be sure, as noted, the Government presumably could have learned earlier of the updates to
the forensic tool, which would have permitted it, at an earlier date, to re-start its efforts to gain
access to the iPhone via that tool.  But that situation is a far cry from the one in *Metter*.  The
Court is unaware of any authority under Rule 41(g) requiring return of the phone on such a basis.

[6] Although disputing that the iPhone is his, Gray states that "if [the phone] is, in fact," his
iPhone, it may contain "potentially exonerative data" helpful to his defense.  Def. Br. at 11.
Tellingly, however, Gray does not proffer any factual basis for this supposition, or seek relief

## CONCLUSION

For the foregoing reasons, the Court grants Gray's motion to quash,[7] and denies Gray's

Rule 41(g) motion.  The Clerk of Court is respectfully directed to terminate the motions pending

at Docket 94.

---

under Federal Rule of Criminal Procedure 16(a)(1)(E), or *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

In all events, a motion based on these sources of authority would not have given Gray the relief he seeks in his Rule 41(g) motion: unilateral (*i.e.*, defense-only) access to the phone.  Rule 16 requires the Government to "permit the defendant to inspect and to copy" evidence "within the Government's *possession, custody, or control*."  Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). *Brady* similarly requires the Government "to turn over all material exculpatory evidence *in its possession*."  *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) (emphasis added).  As courts have uniformly held, the *contents* of an encrypted device are not within the Government's possession, custody, or control for purposes of Rule 16 or *Brady*.  *See United States v. Young*, No. 23 Cr. 208 (MJD) (ECW), 2024 WL 913308, at *4–5 (D. Minn. Mar. 4, 2024); *United States v. Case*, No. 19 Cr. 360 (BLW), 2020 WL 4227554, at *3–4 (D. Idaho July 23, 2020).  And the Government cannot copy the contents of a phone to which it is unable to obtain access.  The Court is unaware of any authority, under Rule 16 or *Brady*, that requires the Government to give a defendant superior access to evidence than the Government itself has.  *Cf. United States v. Bibby*, 752 F.2d 1116, 1125 (6th Cir. 1985) ("The purpose of *Brady* and its progeny is not to require the prosecutor to search out exculpatory evidence but rather to divulge whatever exculpatory evidence he already has.").

The Government has indicated that it would produce a full image of the iPhone to the defense, pursuant to Rule 16, if Gray furnished it with the passcode.  Gov't Br. at 7.  Gray, however, has refused to do so.  For the reasons reviewed above, under the Fifth Amendment, it is Gray's right to decline to give the Government this information, but he may not seek to access the phone's data while denying the same access to the Government.  *See Young*, 2024 WL 913308, at *5 (there is "no authority" for the proposition that a defendant can "unlock a device the Government has been unable to decrypt for inspection and copying, but then lock it back up when complete— even though there is a warrant authorizing a search of the device").

[7] In the event that the Government wishes to file an interlocutory appeal of this order, it should do so forthwith.  Trial is scheduled to start in six weeks; the parties were informed more than six months ago that the case would be tried in May 2024, Dkt. 76; the charges against Gray have been pending for nearly two and a half years; and the Government waited until two months before trial to promulgate the instant subpoena.  These circumstances do not commend pushing back the trial date.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 9, 2024
      New York, New York